**John SCHNORR, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

No. 86–3478.

United States Court of Appeals, Eleventh Circuit.

May 7, 1987.

Alice K. Nelson, Tampa, Fla., for plaintiff-appellant.

Robert W. Merkle, U.S. Atty., Lynne England, Tampa, Fla., for defendant-appellee.

Before GODBOLD, and ANDERSON, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

GODBOLD, Circuit Judge:

John Schnorr appeals from the district court's judgment affirming the Secretary of Health and Human Services' denial of his claim for social security disability insurance benefits. We reverse and remand for further administrative proceedings.

## I. BACKGROUND

At his hearing before an administrative law judge Schnorr testified that he is 56 years old, six feet, one and one-half inches tall, and weighs 242 pounds. He had completed the tenth grade and had no vocational training. His past relevant work experience was that of a service station owner and operator, an occupation that he had held for the previous 27 years. During the 12 years preceding the hearing, Schnorr had ceased repairing cars but continued to pump gas and keep the books. For the last year and a half he primarily handled the bookkeeping and banking, which took approximately one-half to two hours a day. On October 1, 1981 Schnorr sold the service station because he was no longer able to work.

Schnorr testified that he cannot work because of painful arthritis in both knees, both thumbs, left hip and right shoulder. He testified that he experiences severe pain in his knees "like there's gravel between the joints" when he walks and that it feels like "a bunch of needles in there" if he sits for a long period of time. He further testified that he could only walk about one-half a block, could not take extended car

trips, and could no longer bowl or dance. He explained that he spent his days working jigsaw puzzles and doing housework, which included making beds, cooking, dusting, and caring for pets.

Schnorr testified that his knees hurt all of the time. He could sleep for only two to three hours a night, and he could stand comfortably for only about five minutes. He also said that sometimes his knees simply gave out, causing him to fall. Schnorr came to the hearing in a motorized electrical cart, which he claimed to use all of the time. He admitted that his doctors had told him to lose weight, but he found it difficult because he could not exercise. Schnorr also testified that he had experienced shortness of breath and that the arthritis in his thumbs limited his ability to use his hands. Schnorr admitted, however, that except for his knees he probably could do the necessary work at the service station.[1]

Schnorr first sought treatment for his knees from Dr. Donald Keller, an orthopedic surgeon, on December 10, 1979. He complained of bilateral patella (knee cap) pain. An examination of both knees revealed hypermotility (excessive spontaneous movement) with lateral displacement of the patellas and tenderness on palpatation of the undersurface of the patellas. X-rays were consistent with chronic chondromalacia (abnormal softening of the cartilages). Keller injected the left knee with a steroid preparation and instructed Schnorr to return in ten days for an injection in his right knee, but Schnorr failed to return for the further treatment. Schnorr returned to Keller on September 24, 1981, complaining of progressively worse pain in his knees. The doctor prescribed a knee brace.

On September 30, 1981 Schnorr was treated by Dr. G. Pierce Jones, an orthopedic surgeon, for the same problem. Jones found that Schnorr was obese and walked with a limp. His examination revealed mild effusion (escape of fluids causing swelling)

---

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Although the ALJ found that Schnorr had an impairment because of his knee problems, the ALJ did not credit all of Schnorr's evidence, especially his testimony regarding pain.

of the right knee and crepitance (grinding of the joint) in both knees. Jones diagnosed osteoarthritis (chronic multiple degenerative joint disease) of both knees and recommended that Schnorr use a cane for walking, lose weight, and begin using an anti-arthritic medication with injections for flare-ups. Jones concluded that Schnorr would "ultimately require total knee replacement."

Jones saw Schnorr again on December 10, 1981. The doctor found tense effusion in Schnorr's left knee, gave him an injection for pain, told him to continue taking aspirin, and prescribed clinoral, an anti-inflammatory medication. Jones again diagnosed osteoarthritis of both knees but noted that Schnorr's relative young age militated against knee replacement.

Schnorr was next seen by Dr. Edward Homan, an orthopedic surgeon who had taken over Dr. Jones' practice, on April 16, 1982. Homan reported that Schnorr was doing very well with his motorized electrical cart. He believed that Schnorr was not a candidate for surgical knee replacement because of his age. He advised Schnorr to lose weight but noted that it was difficult without the ability to exercise. Schnorr also complained of pain in his thumbs. X-rays revealed a decrease in joint space, and Homan gave Schnorr injections for pain in each thumb.

On June 30, 1982 Schnorr was hospitalized for a complete medical evaluation under the care of Dr. Laurence Neufeld. Range of motion studies of the knees revealed patellofemoral crepitation (grinding of joints in knees) but a full range of motion. Consulting orthopedic surgeon, Dr. L. Schlike, examined Schnorr's knees and diagnosed bilateral patellofemoral syndrome, greater in the right knee, and bilateral medial compartment syndrome. Schlike recommended that Schnorr avoid bending his knees, immobilize his right knee, and lose weight. A pulmonary function study by Dr. H. Bernal, a consulting pulmonary disease specialist, revealed a

markedly reduced diffusion capacity with mild hypoxemia (deficient oxygenation of the blood), despite normal ventilation. Flow volume loops and calculations were significantly reduced and suggested pulmonary emphysema (swelling of lung air spaces). In a letter dated July 19, 1982 Neufeld concluded that Schnorr was totally disabled by his combined impairments of arthritis of both knees and significant obstructive pulmonary disease compatible with emphysema.

Dr. Keller re-evaluated Schnorr on October 11, 1982. Keller concluded that "based on [my] clinical findings it should be noted that the patient has limited physical capabilities of standing, walking, climbing and alternately sitting and standing." Dr. Homan stated in a report dated November 3, 1982 that Schnorr was unfit for any ambulatory occupations, though capable of some sedentary work.[2]

Schnorr also underwent several consultative examinations upon the request of the Secretary. On December 1, 1981 Schnorr was examined by Dr. Jerald Zakem, an internist specializing in rheumatology. Zakem diagnosed osteoarthritis of both knees. X-rays revealed joint space narrowing with osteophyte formation (bony excrescence or growth) in both knees, soft tissue swelling and bone hypertrophy in the right knee, hypertrophy in the left knee, and crepitus on range of motion in both knees. Zakem found that no cane was medically required but that a cane probably would alleviate pain.

Dr. Robert Wolfson, a consulting internist, performed pulmonary function studies on Schnorr on February 15, 1982. The results indicated a breathing capacity sufficient for light, medium and heavy work.

The ALJ determined that Schnorr was not disabled because he had the residual functional capacity to return to his former work, which the ALJ classified as light work not requiring constant bending of the knees. The Appeals Council affirmed on

---

**2.** Schnorr submitted these two medical reports with his request for review by the Appeals Council.

review,[3] and then Schnorr initiated this action in district court. The district court, over Schnorr's objections, adopted a magistrate's report and recommendation and affirmed.

## II. DISCUSSION

### A. Classification of Past Work

■ The Secretary found that Schnorr was not disabled because he had the residual functional capacity to perform a wide range of light work, except where the work involved the bending of his knees, and therefore could return to his past work as owner-operator of a service station. The Secretary's classification of Schnorr's past work as "light work" was improper because he failed to develop a detailed description of the duties and responsibilities of an owner-operator of a service station.[4]

Although a claimant bears the burden of demonstrating an inability to return to his past relevant work, the Secretary has an obligation to develop a full and fair record. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir.1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work. *Nelms*, 803 F.2d at 1164. It is unclear whether the Secretary here found that Schnorr could return to his normal duties as an owner-operator or to his limited bookkeeping duties. We therefore remand this action to the Secretary for a further hearing with regard to the physical demands of Schnorr's past work and his ability to perform this work in view of his impairments.

### B. Discounting of Treating Physicians' Opinions

The Secretary found that Schnorr had the residual functional capacity to perform light work not involving frequent bending of the knees. In reaching this decision, however, the Secretary failed to afford the proper weight to the treating physicians' opinions.

In evaluating the medical evidence, the "[Secretary] must accord 'substantial' or 'considerable' weight to the opinion of a claimant's treating physician unless 'good cause' is shown to the contrary." *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir.1985); *see also Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

The Secretary has defined "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (1986). Most of Schnorr's treating physicians concluded that his ability to return to work was limited. Neufeld stated that Schnorr's arthritis and pulmonary impairments were totally disabling. Keller explained that Schnorr had limited abilities for standing, walking, climbing, and alternately sitting and stand-

---

3. The decision of the ALJ automatically became the final decision of the Secretary when it was affirmed by the Appeals Council. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986).

4. The government conceded at oral argument that the determination of whether Schnorr can return to his past relevant work cannot be de-

pendent on Schnorr's capacity to raise capital to purchase a service station, and our use of the term "owner-operator" is not intended to imply otherwise. Rather, the proper inquiry is whether Schnorr can perform the physical duties and responsibilities of an owner-operator of a service station.

ing. Homan concluded that Schnorr was unlimited in his ability to sit but was "not fit for any ambulatory occupations." [5] None of these opinions supports a finding that Schnorr could perform the regulatory requirements of light work not requiring the frequent bending of the knees.

The Secretary properly discounted Neufeld's opinion that Schnorr was totally disabled because it was not supported by objective medical evidence and was merely conclusory. Neufeld found that Schnorr was totally disabled in part because of a pulmonary impairment. The Secretary noted, however, that the doctor who actually performed the pulmonary tests indicated that they were "suggestive" but not "diagnostic" of emphysema. Moreover, the test results indicated "mild" obtrusive pulmonary impairment, which Neufeld called significant. The Secretary therefore properly discounted Neufeld's opinion.

The Secretary, however, failed to present good cause for discounting the opinions of Keller and Homan. Considering the record as a whole, the medical evidence does not conclusively counter these doctors' opinions. The Secretary therefore accorded improper weight to the opinions of Schnorr's treating physicians, and this action must be remanded to the Secretary for a proper consideration of these medical opinions.

### C. *Failure to Follow Prescribed Treatment*

The Secretary contends on appeal that disability benefits were properly denied because Schnorr failed to follow his prescribed medical treatment, specifically, to lose weight and obtain a knee brace. A claimant may be denied benefits pursuant to 20 C.F.R. § 404.1530 (1986) if the Secretary finds that he failed to follow prescribed treatment and that if he had followed the treatment, his ability to work would be restored. *See Patterson v. Bowen,* 799 F.2d 1455, 1460 (11th Cir.1986). There was no evidence that if Schnorr lost

weight or obtained a knee brace his ability to work would have been restored.

### D. *Remaining Contentions*

Schnorr contends that the Secretary erred by not obtaining the testimony of a vocational expert both to classify his past work and to determine his residual functional capacity. The testimony of a vocational expert is only required to determine whether the claimant's residual functional capacity permits him to do other work after the claimant has met his initial burden of showing that he cannot do past work. *Chester v. Bowen,* 792 F.2d 129, 131–32 (11th Cir.1986). Because we have held that the record concerning past work was insufficiently developed, this issue is mooted in this appeal, and we assume that it will not arise again on remand.

Schnorr contends that the Secretary improperly discredited his complaints of disabling pain through application of a "sit and squirm" jurisprudence. The Secretary did not ignore Schnorr's complaints of pain; rather, he considered them and rejected them as not credible. The Secretary relied on substantial evidence, including demeanor evidence, to conclude that Schnorr's complaints were not credible. *See Norris v. Heckler,* 760 F.2d 1154, 1158–59 (11th Cir.1985); *see also Chester,* 792 F.2d at 132.

We have considered Schnorr's other contentions and find them without merit.

REVERSED and REMANDED.

---

5. No other treating physician gave an opinion on Schnorr's ability to work.