**Evelyn SMITHERMAN, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

No. Civ.A.00–M–1157–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 11, 2001.

Darryl W. Hunt, Marilyn H. Macey, Clark & James, LLC, Birmingham, AL, for Plaintiff.

Julia J. Weller, United States Attorney's Office, Montgomery, AL, for Defendant.

## ORDER

McPHERSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), the claimant, Evelyn Smitherman, brings this action to review a final decision by the Commissioner (Doc. # 1, ¶ 3). The Commissioner denied the claimant's claims for Disability Insurance benefits and Supplemental Security Income ["SSI"] (Doc. # 11, p. 2). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED.

## I. PROCEDURAL BACKGROUND AND FACTS

The claimant was born on 9 October 1947, and was 49 years old at the time of the administrative hearing (R. 12, 51). The claimant has a high school education (R. 12, 51). The claimant's past relevant work experience includes quality inspector, sales representative, cashier/sales attendant, and production worker (R. 12). She alleges a disability onset date of 31 August 1994 because her "immune defense system is so weak" (R. 88). She testified that she "stay[s] sick all the time", has constant headaches, reflux disease, gastral disease, thyroid problems, menopause, and suffers from sinus problems, ear problems and stomach problems (R. 52).

On 25 May 1995, the claimant filed two applications under the Social Security Act: 1) an application for Disability Benefits under Title II of the Act; 42 U.S.C. §§ 401 et seq. (R. 81–83); and 2) an application

for Supplemental Security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (R. 84–87). These applications were denied initially and upon reconsideration (R. 90–98). Following an administrative hearing, the Administrative Law Judge ["ALJ"] denied the claimant's requests for benefits in a decision dated 12 January 1998 (R. 8–24). On 26 May 2000, the Appeals Council denied the claimant's request for review (R. 5–6). Therefore, the hearing decision became the final decision of the Commissioner of Social Security. On 24 August 2000, the claimant filed the instant action which alleges that "the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied" (Doc. # 1, ¶ 4).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Act, this court's role is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

 This court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997).[1] "In determining whether substantial evidence exists, [this court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). The Commissioner's "fail-

ure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir.1991).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must also evaluate the claimant's case using this sequential evaluation process. *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984).

First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant's condition or impairment must be deemed "severe."[2] Third, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claim-

---

**1.** In *Graham,* the Court of Appeals stated that "substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 129 F.3d at 1422. *See also Richardson v. Perales,* 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

**2.** The condition is severe if it significantly limits claimant's physical or mental ability to do basic work activities. §§ 20 C.F.R. 404.1520(c)(1), 416.920(c)

ant is conclusively presumed to be disabled based on his or her medical condition.

If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the fourth step, namely, an assessment of the claimant's residual functional capacity ["RFC"]. The assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of his or her RFC, age, education and work experience, the claimant can perform other work. §§ 20 C.F.R. 404.1520(a)–(f), 416.920(a)–(f).

## B. The ALJ's Findings

Within the structure of the sequential evaluation process, the ALJ made the following findings:

 A. The claimant met the disability insured status requirements of the Act on the alleged onset date of disability and continued to meet them through 30 June 1999 (R. 12).

 B. The claimant has not engaged in substantial gainful activity ["SGA"][3] since the alleged onset date of disability (R. 19).

 C. The medical evidence establishes that the claimant has a severe impairment due to irritable bowel syndrome, gastroesophageal[4] reflux[5] disease, depression, and anxiety; and the following non-severe impairments: yeast overgrowth, sinusitis, hypothyroidism, headaches, and ringing of the ears (R. 19).

 D. The claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4 (R. 19).

 E. The claimant's subjective complaints, to the extent that they are inconsistent with the RFC below, are not substantiated by the record and are not credible (R. 19).

 F. The claimant is able to perform her past relevant work as a production worker (R. 19).

 G. The claimant has the RFC to perform unskilled, light work (R. 19).

As a result of his evaluation, the ALJ concluded that the claimant did not have a "disability," as defined in the Act at any time through the date of this decision, and that he was therefore ineligible for any benefits (R. 19).

## C. Vocational Expert Testimony

The claimant asserts that the ALJ erred in failing to report vocational expert testimony and accord the testimony weight (Doc. # 11, p. 4). Specifically, the claimant asserts that the ALJ failed to report that the vocational expert ["VE"] testified that the claimant could not perform her past unskilled work as a production worker (*Id.* at p. 5). Moreover, the claimant asserts that "while the ALJ is not bound by the testimony, he should state the weight he accords to all testimony presented at the hearing" (*Id.*) (citation omitted). Therefore, the claimant concludes that the ALJ failed to demonstrate that she could return to past relevant work, and erred in

---

**3.** Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.

**4.** Gastroesophageal is defined as "of, relating to, or involving the stomach and esophagus."

Webster's Medical Desk Dictionary 260 (1986).

**5.** Reflux is defined as "to cause to flow back or return." Webster's Medical Desk Dictionary 609 (1986).

failing to continue the sequential analysis (*Id.* at p. 6).

In the administrative hearing, the VE testified regarding the claimant's past relevant work and identified each of the claimant's jobs and the exertional level and skill level for each job. The VE stated:

[The sewing quality inspector position] would be in the, in the exertional level of light, and the SVP of 3, which would put it in the semi-skilled area. The, the production worker position that, that I heard the claimant describe would be in the exertional level of light, SVP of 2, which would be an unskilled area. The sales representative position that I heard the claimant describe would be also in the light range of strenuousness, and the SVP of 3 on that. The cashier, cashier/sales attendant position that I understood described by the claimant regarding the Wal–Mart employment would be, would be in the, also in the light range, and SVP of 3 . . .

(R. 76–77). The VE further testified that the sales cashier position was semi-skilled (R. 77). The ALJ then inquired as to whether the claimant would be able to perform any of her past relevant work if she was found to be:

49 years of age, with a 12th grade education . . . could perform light work, being limited to the following nonexertional impairments: [h]aving sinusitis, headaches, gastritis, intermittently since 1991 . . . hearing sensitivity was found to be within normal limits for speech range, although she did show a slight amount of pressure at 5,000 hertz on each, but anticipated that she would [sic] have any difficulty with speech communication . . . was found to have dysthmic disorder with anxiety disorder, NOS. Menopause; thyroid problems; chronic sinus problem; and yeast overgrowth . . . [a]nd that those conditions caused her to have an estimated degree

of impairment in her ability to relate to other people only to a mild degree; also, with the ability to attend meetings to a mild degree. Degree of deterioration in personal habits, moderate degree of impairment. Estimated degree of constriction of interest would be moderate. To understand, carry out, and remember instructions, moderate. To respond appropriately to supervision, mild. Respond appropriately to coworkers, mild; and to customary work pressures, mild, as well as to perform simple tasks, mild. To perform complex tasks, moderate. To perform repetitive tasks, mild. And to perform daily tasks, moderate.

(R. 77–78). The VE replied that the claimant would be able to perform the sales attendant position at Wal–Mart and "sales rep" position (R. 78). However, the VE also replied that the claimant would not be able to perform her past relevant work as a production worker (R. 78). When the ALJ asked "why [the claimant] would not be able to do that" position, the VE responded: "[b]ecause of the [sic] working around equipment, and I believe that wouldn't be in the claimant's best safe interest" (R. 79).

Notwithstanding the VE's testimony, the ALJ found that the claimant has the RFC to perform unskilled, light work activity (R. 18). The ALJ stated that "this assessment is fully supported by the objective evidence, treatment records, the claimant's activities, the consultative examinations, and the record as a whole" (R. 18). Therefore, the ALJ concluded that "given this RFC, the claimant is able to return to her past relevant work as a production worker" (R. 18).

█ The court finds that the ALJ properly found that the claimant had the RFC to perform light, unskilled work. The ALJ's finding that the claimant can perform her past relevant work as a produc-

tion worker is not inconsistent with the ALJ's RFC findings, nor the VE's relevant testimony. In fact, according to the VE's testimony, the claimant's past relevant work as a production worker falls specifically into the RFC category of light, unskilled work (R. 76). Moreover, because the ALJ found that the claimant was able to perform her past work, he was not required to call a VE to support his determination. *See Lucas v. Sullivan,* 918 F.2d 1567, 1573 n. 2 (11th Cir.1990).

"[I]t is only when the claimant can clearly do *unlimited* types of light work, ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *See Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir.1989) (emphasis in original). Under the ALJ's findings it is evident that the claimant can do *unlimited* types of light work, because the ALJ did not place any work restrictions on the claimant. Accordingly, since the claimant can do unlimited types of light work, making it unnecessary for the ALJ to call a vocational expert to support his finding that the claimant was able to perform her past work as production worker, the court finds that the claimant's contention is without merit.

### D. Opinion of Treating Physician

The claimant contends that the ALJ erred in rejecting the opinion of Dr. Glenda Atilano ["Dr. Atilano"], the claimant's treating physician (Doc. # 11, p. 6). She argues that the ALJ improperly substituted his judgment for that of Dr. Atilano when he disagreed with Dr. Atilano's opinions of the claimant's inability to work due to hypothyrodism and post-menopausal symptoms (Doc. # 11, p. 7).

The objective medical evidence in this case includes medical records from Dr. Atilano, a physician at Montgomery Primary Health, from September 1995

through April 1997 (R. 189–211). In a hand-written letter dated 5 November 1996, Dr. Atilano stated that the claimant had hypothyroidism, irritable bowel syndrome, post-menopausal syndrome, depression and gastroesophageal reflux disease (R. 182). She concluded that "[f]or these reasons, [the claimant] is unable to work" (R. 182).

The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir. 1985). A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. The Court of Appeals has found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *See Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–81 (11th Cir. 1987). The Court of Appeals has also found good cause where the doctors' opinions were conclusory or inconsistent with

their own medical records. *See Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir.1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

■ Based upon the Court of Appeals' directives, this court finds that ALJ properly considered Dr. Atilano's statement in the 5 November 1996 letter. The ALJ specifically addressed Dr. Atilano's opinion of the claimant's inability to work and discounted its credibility, stating:

> In November 1996, Dr. Glenda Atilano, the claimant's treating physician, stated that the claimant is unable to work because of hypothyroidism, irritable bowel syndrome, post menopausal syndrome, depression and gastroesophageal reflux disease. The determination of disability is an issue reserved to the Commissioner. As noted above, there is no indication that the claimant's hypothyroidism causes any limitations. With the exception of hot flashes in April and November 1996, she does not have any symptoms related to post menopausal syndrome; she is not alleging disability due to a related complaint. Furthermore, as discussed above, the claimant's depression and abdominal difficulties are not of the severity to preclude all work activity. Therefore, this assessment is not supported by the record and entitled to little probative weight.

(R. 17).

This court concludes, moreover, that Dr. Atilano's treatment notes do not support her statements in the 5 November 1996 letter (R. 210–211). The treatment notes indicate that the claimant's treatment was very conservative in nature and that most of her complaints were controlled by medications. In fact, the claimant testified that when she visited Dr. Atilano, Dr. Atilano simply "[wrote] [the claimant's] prescriptions and [took] [her] blood tests every three months to see if [she] need[ed] to stay on the medication ..." (R. 64). The treatment notes do not indicate that Dr. Atilano placed any physical limitations or restrictions on the claimant or the claimant's activities. Specifically, the claimant testified that Dr. Atilano has not told her "to do or not to do any certain things" (R. 68). Dr. Atilano also did not prescribe any form of therapy or rehabilitative exercises for the claimant. The court finds, that as a result of her failure to do so, it is reasonable to conclude that the claimant was physically able to handle the tasks required by light, unskilled work, especially with medication that either curbed or eliminated her symptoms.

Further, not only is the medical evidence contrary to Dr. Atilano's opinion, but the claimant's own activities contradict Dr. Atilano's conclusions regarding her ability to work. The ALJ considered the claimant's testimony regarding her daily activities (R. 13), which included cooking, cleaning house, washing dishes, reading, vacuuming, taking out the trash, shopping, and jumping on a trampoline for up to 10 minutes for exercise (R. 59–62, 68). Inasmuch as the physical exertion and stamina required to engage in the aforementioned activities does not exceed the level of physical exertion required for light, unskilled work, this court must agree with the ALJ. Accordingly, based upon the claimant's testimony, objective medical evidence and evidence in the record as a whole, the court finds that it was entirely reasonable for the ALJ to question or discredit Dr. Atilano's opinions of the claimant's disability and functional limitations.

### E. Medical–Vocational Rules

The claimant contends that the ALJ erred in failing to find her disabled under Medical Vocational Rules 201.12 and 201.14 (Doc. #11, p. 7). The claimant

asserts that the ALJ "could have placed her at sedentary based on the exertional and nonexertional impairments," and that if she was only capable of sedentary work, the medical-vocational guidelines would apply and she would be found presumptively disabled (Doc. # 11, p. 7–8).

The court finds that this contention is completely without merit. This court cannot speculate about the action that the ALJ *could* or *could not* have taken, or substitute its judgment for the judgment of the ALJ. As previously stated, review by the federal court in these cases is sharply circumscribed in the determination of eligibility for benefits. The court is limited to determining whether the Commissioner's findings are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Using this deferential standard, the court is not persuaded by the claimant's argument to reverse the administrative determination. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm the decision if it is supported by substantial evidence." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986). Further, the court must consider whether the decision of the Commissioner contains a material error of law. *Walker v. Bowen,* 826 F.2d 996 (11th Cir.1987). Absent legal error, an administrative determination that is supported with substantial evidence must be affirmed. *See Chester v. Bowen,* 792 F.2d 129 (11th Cir.1986).

■ Moreover, the medical vocational rules apply in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in [SGA] and *the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.* Part 404, Subpart P, Appendix 2, § 200.00 (emphasis added).

In this case, the ALJ properly found that the claimant could perform light unskilled work, and therefore *could* perform her past relevant work as a production worker. *Supra.* The medical vocational rules therefore are inapplicable to this case. Accordingly, this court concludes that the ALJ was not required to make his disability determination based upon the medical vocational rules, and thus the claimant's contention has no merit.

For all of these reasons, the court finds no error in the ALJ's decision and finds as well that the ALJ's decision is supported by substantial evidence and is the result of the application of appropriate legal standards.

## IV. CONCLUSION

For the foregoing reasons, it is the Order of this court that the decision of the Commissioner be AFFIRMED.