**Crystal BURKETT, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendants.**

**Civil Action No. 03–M–150–S.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 19, 2003.

Micki Beth Stiller, Law Office of Micki Beth Stiller, Montgomery, AL, for Plaintiff.

Frank V. Smith, III, Social Security Administration, Region VII, Kansas City, MO, Leura Garrett Canary, Martha Ann Miller, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Crystal Burkett (hereinafter referred to as "Burkett") has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED for the reasons set forth herein.

## I. PROCEDURAL BACKGROUND AND FACTS

Burkett was born on 24 July 1952 and was 47 years of age when the administrative hearing was decided (R. 41, 53). She has a ninth grade education (R. 42) and past relevant work experience (R.60). Burkett alleges a disability onset date of 2 October 1995 (R. 87, 95) due to ankle problems and depression (R. 69), specifically ankylosis and affective disorders (R. 68). Burkett's challenge is limited to the ALJ's finding regarding her residual functional capacity (hereinafter referred to as "RFC") as it relates to her depression/affective disorder (Doc. # 9, p. 2).

This case involves two applications filed under the Social Security Act: 1) an application for Disability Benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. (R.

1. On 10 April 1998, the claimant filed this application alleging disability since 2 October 1995 (R. 20).

2. In *Graham v. Apfel*, 129 F.3d at 1422, the Court of Appeals has stated that:

87–89); and 2) an application for Supplemental Security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (R. 240–242).[1] These applications were denied initially (R. 70) and upon reconsideration (R. 77).

Following an administrative hearing, the Administrative Law Judge ["ALJ"] denied the claimant's request for benefits in a decision dated 4 January 2000 (Doc. 1, p. 2, para.5). On 25 June 2001, the Appeals Council denied the claimant's request for review (Doc. 1, p. 2, para.6). Therefore, the hearing decision became the final decision of the Commissioner of Social Security. On 7 February 2003, the claimant filed the instant action (Doc. # 1).

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). This Magistrate Judge must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[2] *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater,* 84 F.3d at 1400 (citations omitted).

Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir.1984), and the steps are as follows:

1. If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2. If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

3. If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled.

4. Even if a claimant is disabled according to all of the criteria enunciated in steps one (1) through three (3), if upon medical evaluation, it is determined that the claimant can return to his previous job, the claimant will not be entitled to benefits.

5. Finally, even if a claimant (a) is not working or engaging in substantial gainful activity; (b) has a severe impairment that is listed in Appendix I of the regulations (or may be considered and equivalent thereto); (c) that impairment has lasted or is expected to last for more than twelve (12) continuous months; and (d) he is not expected to be able to return to his previous job, if the Social Security Administration can show that the claimant is capable of performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. §§ 1381.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

### B. The ALJ's Findings

In the instant matter, the ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Burkett has not engaged in any substantial gainful activity since the onset date of her alleged disability.

2. Burkett has the following "severe" impairments: status post fracture and surgical repair of her left ankle;

arthritis; major depression, recurrent; psychological factors affecting general medical condition; and a personality disorder not otherwise specified (NOS).

3. Burkett's impairments, whether considered individually or in combination, ***do not meet or equal*** any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]

4. Burkett's allegations of pain and functional limitations are not credible (R. 26–27).

5. Burkett's physical residual functional capacity permits her to perform some work, although no past relevant work, that is available in significant numbers in the national economy.

## C. Application of the Standard to the Claimant

Based upon the ALJ's finding, the claimant survives the first two steps of the sequential evaluation process, because she is not engaged in "substantial gainful activity" and her conditions are "severe." However, the claimant does not survive step three, because the ALJ concluded that her impairment was not sufficiently severe to meet or equal the severity of any listed impairment set forth in the governing regulations (R. 26–27). The ALJ continued his analysis nonetheless to evaluate the claimant's functional limitations in order to determine whether the limitations are truly disabling within the meaning of the Act.

## D. Rejection of Treating Physician's Opinion

The claimant asserts that the ALJ improperly rejected the opinion of her treating physician, Dr. Ann Jacobs ("Dr.Jacobs") (Doc. # 9, p. 8). The objective medical evidence presented in this case is rather extensive and includes treatment and/or progress notes from a number of specialists and physicians, beginning as early as 1994.

Starting in 1992, Burkett was treated by Dr. James DeHaven ["Dr. DeHaven"] when he performed a surgery on her left ankle (R. 217). On 16 September 1994, Burkett presented to Flowers Hospital in Dothan, Alabama ["Flowers"], complaining of pain to her left ankle. At such time, Dr. DeHaven noted that Burkett was on Prozac. (R. 217). With regard to problems noted in her ***past medical history,*** Dr. DeHaven noted ***"[n]one, other than maybe some minor depression"*** (R. 217) [Emphasis added].

On 8 February 1999, Burkett presented again to Flowers and was treated by Dr. DeHaven, who, upon diagnosing degenerative joint disease in her left ankle, scheduled her for surgery, i.e., an arthroscopic debridement of the left ankle, on the following day (R. 212). Dr. DeHaven noted that

> [Burkett] has had the previous ankle injury as described. She has also had a tubal ligation and some kind of fissure surgery done in 1988. ***Other than that she has no medical problems. She currently takes no medicines.***

(R. 212) [Emphasis added].

Dr. Jacobs, a psychologist, examined Burkett on 15 March 1999 (R.193–196). With regard to her mental status, Dr. Jacobs noted that

> ... [Burkett] was alert and fully oriented. Speech was normal in form, progress and content. There were no loose associations. There was no confusion.

---

**3.** As a result of this finding, the evaluation could end and the ALJ could conclude that Burkett is not entitled to benefits within the meaning of the Act.

Affect was restricted but generally appropriate to the context of thought and conversation. There was no liability, no evidence of anxiety.... Her sleep problems have been present for over a year.... She has crying spells about once a week. This symptom has persisted for about one to two years.

(R.194).

During the course of her evaluation, Dr. Jacobs administered the Minnesota Multiphasic Personality Inventory—II ("MMPI"). As a result of the outcome, Dr. Jacobs noted that

> ... [t]he validity scales revealed extreme elevations on four of the clinical scales: depression, hypochodriasis, hysteria and psychosthenia ... The profile presented is one of a somatically preoccupied individual.... She **will exaggerate** her symptoms to gain credibility and sympathy. At the same time **this exaggeration makes it difficult to gauge the severity of her symptoms.**

(R. 195) [Emphasis added]. Dr. Jacobs' diagnostic impression was in part major depression, recurrent due to psychological factors that could affect one's general medical condition (R. 195). In her summary, Dr. Jacobs notes that "[Burkett] is prescribed pain medication. She has been prescribed Prozac for depression in the past and had received individual therapy for several months." (R. 195).

In addition to administering the MMPI on 15 March 1999, Dr. Jacobs also completed Burkett's SQRFC (R. 197–8).

■ The law of this circuit is clear. Testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Broughton v. Heckler,* 776 F.2d 960, 961–2 (11th Cir. 1985). A similar preference for the opin-

ions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

■ Even in consideration of the above articulated rules, the ALJ in the instant matter concluded that Dr. Jacob's determination that Burkett had moderately severe limitation in her ability to respond to customary work pressure was erroneous (R. 29). In making his decision, therefore, the ALJ gave less than substantial weight to Dr. Jacob's opinion. As a matter of law, if an ALJ gives less than substantial weight to a treating physician's opinion, he must clearly articulate **good cause** for doing so. Failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053.

"Good cause" may exist where the doctor's opinion was not bolstered by the evidence or where the evidence supported a contrary finding. *See Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–281 (11th Cir.1987). "Good cause" may also be established if the doctors' opinions were conclusory or inconsistent with their own medical records. *See Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1532–33 (11th Cir.1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991). This court finds that the ALJ properly considered Dr. Jacobs' evaluation of Burkett with regard to her alleged depression.

In support of his conclusion, the ALJ noted that on the Supplemental Question-

naire on Residual Functional Capacity ("RFP") which was done completed regarding Burkett, Dr. Jacobs rated all categories utilized to assess RFP as mild to none, except that she assigned a rating of "moderately severe" to Burkett's ability to perform complex tasks (R. 29). More specifically, the ALJ made the following analysis:

In assessing the claimants [sic] mental residual functional capacity, I have determined that the limitations as set forth in Dr. Jacobs's SQRFC represent a reasonable estimate of the claimant's ability to perform basic work activities, except for the assessment that the claimant had a "moderately severe" limitation in her ability to respond to customary work pressures. In the first instance, such a severe limitation is not supported by Dr. Jacobs' narrative report of her examination. **It does not set forth any specific information that would lead to the conclusion that the claimant was so limited. Moreover, Dr. Jacobs' ratings in all other categories in the SQRFC are inconsistent with a moderately severe limitation in the ability to respond to customary work pressures.** In fact, with the exception of an assessment of a moderate limitation in the ability to perform complex tasks, **Dr. Jacobs opined that, in every other category, the claimant's limitations were either none or mild—ratings which are consistent with a finding that the mental impairment does not even rise to the level of a "severe" impairment** (R. 29).

Furthermore, the ALJ found that

Dr. Jacobs' assessment of the claimant's ability to respond to customary work pressures is not consistent with the other evidence of record. For example, although the claimant stated to Dr. Jacobs that she had had counseling and medication at the time of her husband's death some eight years ago, **the record is devoid of any treatment or medication for any mental impairment since her alleged onset date of disability.** Finally, at the hearing, the claimant did not even mention any mental impairment or any limitations caused thereby (R. 29, 193).

Additionally, some agency non-treating physicians and psychologists determined that Burkett did not suffer from severe depression (R. 25, 163–171, 175–183), which said conclusions were contrary to the opinion of Dr. Jacobs, though partially consistent with the record.

In consideration of the above and upon review of the medical evidence in the record, the court concludes that there is substantial evidence supporting the ALJ's conclusion that Burkett does not suffer from "severe" mental impairment within the meaning of the Act to a degree that would create a duty for the government to pay benefits for disability. Consequently, the court finds that it was entirely reasonable for the ALJ to discount the opinion of Dr. Jacobs, as the opinion was not properly established with regards to Burkett's degree of mental impairment and the extent to which it would impact her ability to perform jobs available in the national economy.

For these reasons, the court finds no error in the ALJ's decision and finds as well that the ALJ's decision is supported by substantial evidence and is the result of the appropriate legal standards.

## IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.

## ORDER

In accordance with the memorandum opinion entered herewith, it is

ORDERED AND ADJUDGED that the decision of the Commissioner be and is hereby AFFIRMED and that this case be and is hereby DISMISSED with prejudice. It is further ORDERED that costs be and are hereby taxed against the plaintiff.