**Russell A. MOORE, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 2:03CV962–M.**

United States District Court, M.D. Alabama, Northern Division.

May 26, 2004.

Amy J. Hayes, Clanton, AL, for Plaintiff.

Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, Jo Anne B. Barnhart, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Russell Moore ["Moore"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to §§ 405(g) and 1383(c) of the Social Security Act (Doc. # 10, p. 1). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED for the reasons set forth herein.

## I. PROCEDURAL BACKGROUND AND FACTS

Moore petitioned for supplemental security income under Title II and Title XVIII of the Social Security Act on 12 December 2000 (R. 95–97, 223–227), alleging a disability onset date of 28 August 2000 and has not worked since that time (R. 95, 224). By his own account, he is unable to work due to "shortness of breath, chest pains, [and] arthritis in back from old injury" (R. 109). He was born on 17 July 1959 and was therefore 43 years of age at the time of the hearing (R. 95). Moore is a high school graduate and has been self-employed in the vinyl siding business since 1985 (R. 17, 111).

After hearing Moore's petition for social security benefits on 6 August 2002 (R. 30–65), an Administrative Law Judge ["ALJ"] issued an adverse decision on 6 November 2002 (R. 16–26). The Appeals Council denied Moore's petition for review, thus rendering the ALJ's decision the Commissioner's final determination (R. 6–8). This action followed on 18 August 2003 (Complaint, Doc. # 1).

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). The court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Ap-*

---

1. In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:

Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept

*fel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater,* 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984); *Williams v. Barnhart,* 186 F.Supp.2d 1192, 1195 (M.D.Ala.2002). The steps are as follows:

1. If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2. If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

3. If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled. If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is deemed true, the ALJ must go on to step 4 of the evaluation sequence.

4. If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5. If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq.

as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

and/or 42 U.S.C. §§ 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

### B. The ALJ's Findings

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Moore has not engaged in any substantial gainful activity since his alleged disability onset date (R. 24).

2. Moore has the following severe impairments: "small sliding hiatal hernia, gastroesophageal reflux disease, and back pain" (R. 24–25).

3. Although Moore has severe impairments, when considered individually and in combination, these impairments do not meet or equal in severity, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 25).

3. Moore's allegations regarding his pain and functional limitations are disproportionate to the weight of the medical evidence (R. 25).

4. Moore does not possess the residual functional capacity to perform his past relevant work (R. 25).

5. Moore "retains the residual functional capacity to lift and carry 20 pounds occasionally and lift and carry 10 pounds frequently; sit, with normal breaks, for a total of six hours in an 8–hour workday; stand and/or walk for a total of two hours in an 8–hour workday; and push and/or pull, including operation of hand and foot controls, without limitation" (R. 25).

6. Moore has not been under a disability at any time through the date of this decision (R. 25).

### C. Application of the Standard

Based on the ALJ's findings, Moore survives step one and step two of the sequential evaluation process, because he has not engaged in any substantial gainful activities since his alleged onset date and he has severe impairments (R. 25). However, he does not survive step three, because his severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment (R. 25). As a result, according to the ALJ, Moore is not disabled within the meaning of the Act (R. 25).

As a matter of law, even if the ALJ determines at step three of his analysis that a claimant does not have a combination of impairments that meet the equivalent of a listed impairment, there can nonetheless be a finding of disability. Such a finding is triggered by the ALJ's assessment at step four, through a determination of the claimant's residual functional capacity ["RFC"].

In the instant matter, the ALJ did assess Moore's RFC and found that the claimant had the ability to perform "sedentary" work (R. 24). However, he cannot return to any past relevant work (R. 24). Moore disagrees, and contends that the ALJ erred as follows:

1. The ALJ erred in failing to consider his shortness of breath and chest pain to constitute severe impairments. As a result, the ALJ did not properly consider all of his severe impairments (Doc. # 10, pp. 5–7).

2. The ALJ erred in finding that Moore retains the residual functional capacity to life 20 pounds occasionally; to lift 10 pounds frequently; to sit, with normal breaks, for six

hours in an eight hour work day; and to stand and/or walk for a total of 2 hours in an eight hour work day (Doc. # 10, pp. 7–13).

In response, the Commissioner argues that substantial evidence supports her decision (Doc. # 11, p. 8). For the reasons set forth herein, the Court agrees with the Commissioner.

### D. Analysis of Evidence

Moore contends that the Commissioner's decision should be reversed for two reasons. First, shortness of breath and chest pain should have been listed as severe impairments. And second, the ALJ committed reversible error in finding that Moore could work for full eight hour days.

### 1. Moore's Complaint

The following excerpt summarizes Moore's complaint regarding his chest pain and shortness of breath:

> The record reflects that August 24 and September 25, 2000 Mr. Moore sought emergency medical treatment for shortness of breath and chest pain at Shelby Baptist Medical Center and University of Alabama Hospital Birmingham, respectfully (Tr. 18). After treatment with nitroglycerin and receiving normal electrocardiogram and echocardiogram test results *Mr. Moore was discharged one day after being admitted* (Tr. 18). Again, on September 25, 2000 Moore was seen in the emergency room at the University of Alabama Hospital, Birmingham wherein he was advised the EKG revealed slight ST segment elevations and a referral was made to Dr. William Rogers to Dr. Gregory Chapman wherein he underwent a left heart catheterization (Tr. 167). Dr. Chapman's impressions were left anterior descending artery has medical sized *mild LAS with mild intra myocardial bridging,* large sized right coronary artery *with minor irregularities* as well as low normal systolic function (Tr. 167–168).

> Mr. Moore also testified at the haring [sic] that he suffers from shortness of breath and chest pain (Tr. 17). Mr. Moore further testified shortness of breath and chest pain keep him from working as he can only work one to one and one half hours with only some day[s] being good.

(Doc. # 10, p. 6)(Emphasis added).

### 2. Analysis of the Alleged Errors

### a. Whether the ALJ's Failure to Consider Chest Pain and Shortness of Breath as Severe Impairments Constitutes Reversible Error

According to Moore, "the evidence of record clearly provides proof that [he] suffers from severe impairments of shortness of breath and chest pain" (Doc. # 10, p. 7). The weight of Moore's argument to support the contention that chest pain and shortness of breath should have been listed as severe impairments rests on findings made by physicians at the University of Alabama at Birmingham ["UAB"]. The ALJ considered the physicians at UAB as Moore's treating physicians and accorded deference to their medical opinions. In his opinion, the ALJ wrote, "I accord substantial weight to the opinions of the medical staffs at Shelby Baptist Medical Center and University of Alabama, Birmingham emergency room and Dr. Rogers" (R. 18).

 "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997) (*citing MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)); *Phillips v. Barnhart,* 357 F.3d 1232 (11th Cir.2004).

The Commissioner's regulations also recommend a similar preference for the opinions of treating doctors.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

▆▆▆ The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. "Good cause" exists where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. See *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280–81 (11th Cir.1987). Good cause also exists where the doctors' opinions were conclusory or inconsistent with their own medical records. See *Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532–33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991).

▆▆▆ In the instant case, the court's analysis need not reach a determination of good cause for the ALJ's findings on severity of impairments, because the ALJ indicated in his opinion that, with respect to Moore's complaints of shortness of breath and chest pain, he gave "substantial weight to the opinions of the medical staffs at Shelby Baptist Medical Center and University of Alabama", whom he regarded as Moore's treating physicians.

> The claimant was examined and tested extensively by each of these sources.

Results of diagnostic tests performed by each were consistent. Their conclusions are in agreement with each other and are not contradicted by any objective medical findings of record.

(R. 18).

Based on the evidence presented by the ALJ and in the record, and the arguments presented by the claimant as a result thereof, the court concludes that the ALJ did not err in failing to consider chest pain and shortness of breath as severe impairments. While Moore may believe that these conditions should be included, the Commissioner has shown good cause for not including them.

Substantial evidence supports his decision. First, he considered and accorded great weight to the medical opinions of treating physicians and UAB that were referenced by Moore in his responsive brief to the court. Second, he analyzed the reasons why the claimant's purported chest pains and shortness of breath should not be considered as severe impairments:

> The claimant alleges he experiences severe chest pains and shortness of breath that contribute to his being disabled. He has undergone extensive testing, as cited previously, to determine the origin of these symptoms. *However, despite the extensive testing from multiple sources, the record lacks evidence of any cardiac abnormality or impairment to offer a reasonable explanation to account for the chest pains and shortness of breath.* X-rays, EKG results, echocardiogram results, and stress test results, as cited previously, were essentially normal. *Heart catheterization revealed an abnormality, but not so severe as to explain the claimant's complaints of chest pain and shortness of breath.* Pulmonary function tests revealed very little airway obstruction. No medical source has of-

fered an explanation for the complaints alleged by the claimant, other than atypical chest pain not of cardiac origin. The claimant himself testified that the doctors have been unable to offer an explanation.

(R. 20)(Emphasis added).

Based on the above, while Moore continues to make subjective allegations of pain, the court concludes that they are not supported by the evidence of record. The court further finds that his allegations of pain are not supported by objective medical evidence that either confirms the severity of the pain and shortness of breath or would be reasonably expected to give rise to the alleged discomfort under the pain standard.

■ As a matter of law, "[t]he Secretary must consider a claimant's subjective testimony of pain if [ ]he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (citations omitted). In consideration thereof, the Commissioner's decision not to include chest pains and shortness of breath as severe impairments in the instant matter is hereby AFFIRMED.

b. *Whether the ALJ Committed Reversible Error When Determining that Moore Retains the Residual Functional Capacity to Perform Full-time Work*

■ In the following summary, Moore also contends that the ALJ erred in determining that he retained the residual functional capacity ["RFC"] to perform full-time work.

The ALJ rejected the opinion of a treating physician, Dr. Das who stated that the claimant's chest pains and shortness of breath on exertion would reduce his ability to work (Tr. 18) The ALJ did not even address the claimant's complaints of pain upon repetitive use of his arms and hands, his pain complaints or fatigue complaints. *The vocational expert testified that if those complaints that Mr. Moore testified to were true, all employment would be precluded.*

(Doc. # 10, p. 10)(Emphasis added).

Although the vocational expert testified that if Moore's subjective complaints were entirely true, all employment would be precluded and therefore, he would be disabled, this is not the case. As discussed in subsection III–A *infra,* Moore's subjective allegations of pain, of which the ALJ speaks, are not entirely credible when evaluated by proper standards. Furthermore, the ALJ did not "reject" the opinion of Dr. Das.

Rather, he stated, "I accept the objective findings of the diagnostic tests ordered by Dr. Das as they are consistent with the record as a whole and are not contradicted by any objective findings of record" (R. 19). He further explained:

No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms ... Physical examination of the claimant by Dr. Das revealed essentially no abnormalities. The lungs were clear to percussion and ausucultation. Palpation and ausucultation of the heart were within normal limits with no abnormal sounds or murmurs. The extremities had no edema or varcosities. The claimant's gait and station were

within normal limits. Range of motion of the spine, upper extremities, and lower extremities were all within normal limits. Muscle tone and strength throughout the body were within normal limits. X-rays of the spine revealed no abnormalities and x-rays of the chest revealed no active cardiopulmonary disease or other significant abnormality ... Results of Dr. Golomb's examination were very similar ... I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence.

(R.22–23). Upon reviewing the record in this case, the court cannot disagree with the ALJ.

Therefore, in consideration of all of the information and analysis in the record and in this opinion, the court concludes that the decision of the Commissioner should be AFFIRMED.

## IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.