Ollie G. CHESTER, Jr.,
Plaintiff-Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.

No. 85–8800
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

June 9, 1986.

William I. Aynes, Atlanta, Ga., for plaintiff-appellant.

Jack Hood, Asst. U.S. Atty., Macon, Ga., for defendant-appellee.

Before RONEY and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Ollie G. Chester appeals from the judgment of the district court affirming the Secretary's denial of his claim for social security disability benefits. Because we find the evidence insufficient to support the Secretary's determination that Chester is not disabled, we reverse and remand.

## BACKGROUND

Ollie G. Chester, who has a seventh grade education and past relevant work experience as a truck driver, filed for social security disability benefits due to blurred vision, dizzy spells, numbness in his legs and right arm, and pain. His application was denied initially and upon reconsideration.

Chester requested and received a hearing at which he presented the following evidence. In February, 1978, Chester was admitted to South Fulton Hospital due to right-side numbness and severe hypertension. Although the cause of the numbness was never discovered, Dr. John Mays opined that it was "possibly secondary to radiao palsy."

Dr. Thomas L. Theus, a consultative physician, examined Chester in November, 1982, to ascertain the cause of his alleged back and neck pains. Dr. Theus's examination revealed negative straight leg raising, good muscle strength, no evidence of muscle atrophy or joint deformity, normal lumbar spine structure and normal resting EKG. Dr. Theus opined that Chester did not suffer any abnormality which could account for his complaints.

In February, 1983, Dr. William P. Sapp, Chester's treating neuropsychiatrist submitted a letter detailing Chester's impairments. According to Dr. Sapp, Chester suffered from schizophrenia, severe chronic cervical strain with fibrositis, severe chronic dorsal strain with fibrositis, severe chronic lumbrosacral strain with fibrositis, and lumbar radiculopathy, chronic traumatic myositis, hypertension, neurovascular distrophy, and other infirmities. Dr. Sapp concluded his report by stating: "It is my considered opinion that this man is totally and permanently disabled for gainful employment."

In July, 1983, Chester underwent coronary artery bypass surgery at the Georgia Baptist Medical Center. He was discharged with a diagnosis of coronary artery disease, hypertension, post-operative bleeding, and pulmonary edema. Dr. Paul Douglas treated Chester after his discharge. Dr. Douglas noted that Chester had significant coronary problems and suffered from episodic chest pains and hypertension. Nonetheless, he concluded Chester's overall prognosis was good.

In March, 1984, Dr. George Zubowicz performed a consultive psychiatric evaluation. He reported that Chester's thinking was slow but found no evidence of looseness of association or of confusion. Dr. Zubowicz noted that Chester's mood was one of perpetual sadness, and although he was psychomotorally retarded because of this, he was otherwise alert and coherent. As to his ability to perform in the work place, Dr. Zubowicz stated that Chester was capable of understanding and carrying out instructions and responding to supervision and coworkers. Dr. Zubowicz's diagnosis was adjustment disorder with depressed mood and work inhibition.

Another consultative physician, Dr. Bipin Patel, examined Chester in March 1984. He found that Chester was not in acute distress, that straight leg raising was normal in the left leg but painful beyond 60 degrees in the right leg. He also found that vertebral bodies were normal, and that coordination was good bilaterally. A cardi-

ac examination revealed a cystolic murmur and atherosclerotic heart disease. Dr. Patel opined that Chester's impairments would limit him to light work.

Based on this evidence, the administrative law judge (ALJ) made findings pursuant to the framework set forth in 20 C.F.R. § 404.1520. He found that Chester: (1) had not worked since February 7, 1979; (2) had a severe impairment (severe coronary atherosclerotic heart disease with status-post coronary artery bypass graft); (3) could not perform his past relevant work as a truck driver; (4) had the residual functional capacity to perform sedentary work; and (5) was, thus, not disabled under section 404.1569 of Regulation No. 4 and Rules 201.19, Table 1 of Appendix 2, Subpart P, Regulation No. 4.

Chester exhausted his administrative remedies whereupon the ALJ's determination became the Secretary's final decision. Chester initiated this action in district court to obtain judicial review of the decision. The district court concluded that the evidence was sufficient to support the Secretary's conclusion and granted the Secretary's motion for summary judgment.

## DISCUSSION

Chester raises two contentions on appeal: (1) that the Secretary's determination that he has residual functional capacity to perform sedentary work is not supported by substantial evidence; and (2) that the Secretary failed to properly evaluate his claims of disabling pain.

### A. Substantial Evidence

■ It is well settled that courts review disability cases to determine whether the Secretary's decision is supported by substantial evidence. *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982). In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983). Moreover, we must also examine legal principles upon which the

Secretary's decision is based. "A determination that is supported by substantial evidence may be meaningless ... if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983).

It is also well settled that the claimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes that he suffers from such an impairment, the burden shifts to the Secretary to establish that the claimant is able to perform other work. *Anderson v. Schweiker*, 651 F.2d 306, 308, 309 (5th Cir. 1981); *Boyd v. Heckler* at 1209.

In this case, Chester carried his burden: the Secretary did not carry her burden. The evidence does not support her determination that Chester had the residual functional capacity to perform sedentary work. Dr. Sapp, who began treating Chester in 1979, opined that he was "totally and permanently disabled." The ALJ accorded Dr. Sapp's opinion "little, if any, probative value," because it was not, in his view, supported by specific and complete clinical findings. The record, however, contains several letters from Dr. Sapp which set forth specific clinical findings that support his opinion. This is not to say that Dr. Sapp's opinion should be dispositive, only that it should not be so casually discounted. "[T]he opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable period of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).

Nothing else in the record is particularly illuminating. Dr. Zubowicz diagnosed Chester as having "work inhibition." Dr. Patel opined that he could perform light work, and Dr. Douglas "hoped" he could.

■ The question arises then: What must the Secretary do to carry her burden when the medical evidence is so inconclusive? In *Ferguson v. Schweiker*, 641 F.2d 243, 247–48 (5th Cir.1981), the court stated:

The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony. While in exceptional cases testimony by a vocational expert may not be necessary ... the general rule is that such testimony is required.

■ We think that is the correct answer. The determination as to whether a claimant has the residual functional capacity to work is not an easy one. And, it is far too important for the Secretary to make without having specific support in the record. In *Broz v. Schweiker*, 677 F.2d 1351 (11th Cir.1982), we stated that the inquiry whether a claimant has the residual functional capacity to work is a matter to be determined through adjudication. Proper adjudication entails fact finding and decision making based on evidence presented or adduced at a hearing or trial. It is thus improper for the decision maker to take judicial notice of an adjudicative fact such as whether a claimant has the residual functional capacity to work. If the medical evidence is inconclusive on the point, as it is here, the record must be developed further through the use of vocational expert testimony. Because the Secretary failed to elicit a vocational expert's testimony in this case, we hold that her determination that Chester had the residual functional capacity to perform sedentary work and was thus not disabled, was not supported by substantial evidence.

### B. Pain Evaluation

Chester contends that the Secretary failed to properly evaluate his complaints of disabling pain. The Secretary contends that she thoroughly considered Chester's complaints and concluded that the evidence did not support a finding that the pain was disabling.

Under the Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794 (Oct. 9, 1984), a claimant's subjective complaints of pain cannot in and of themselves serve as conclusive evidence of disability. The record must document by medically acceptable clinical or laboratory diagnostic techniques the existence of a medical impairment which could reasonably be expected to produce the disabling pain.

This new standard applies to all determinations made by the Secretary or a court on review prior to January 1, 1987. Section 3(a)(3) and (b). These standards also supplant this court's prior standards for considering subjective evidence of pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986).

■ Contrary to Chester's contentions, the record in this case indicates that the Secretary fully considered his allegations of disabling pain. The Secretary simply found that the medical evidence did not support a finding that his pain was disabling. Under the new standards for evaluating subjective complaints of disabling pain, we hold that the evidence is sufficient to support the Secretary's findings.

■ We note, however, that while Chester's pain may not be disabling in and of itself, it may be disabling when considered along with his other impairments. This is exactly the type of determination that deserves input from vocational experts: Whether a claimant with severe impairments and moderate pain has the residual functional capacity to perform gainful activity. Thus, the issue of pain is still relevant in determining whether Chester maintains the residual functional capacity to work.

### CONCLUSION

We find that the Secretary's decision that Chester was not disabled was not supported by substantial evidence; therefore, we reverse the judgment of the district court affirming the Secretary's determination. We remand to the district court which shall remand to the Secretary for further proceedings.

REVERSED and REMANDED.