[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15956
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 21, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00604-CV-FTM-99SPC

DREAMA D. CHEREZA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 21, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Dreama D. Chereza appeals the district court's affirmance of the Commissioner's denial of disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Chereza argues that the Administrative Law Judge's ("ALJ's") decision that her mental health impairments had "medically approved" as of August 1, 2003, is not supported by substantial evidence. She also argues that the ALJ erred in finding that her mental health, cervical spine, and hearing impairments were not "severe." For the reasons set forth below, we affirm.

## I.

In October 1998, an ALJ awarded Chereza disability insurance benefits based on a finding that Chereza was disabled as of June 3, 1996. The ALJ found that Chereza had the following severe impairments: major depression, a generalized anxiety disorder, and a personality disorder with dependent and passive aggressive traits. On September 24, 2004, the Commissioner determined that Chereza was no longer disabled as of August 1, 2003, and terminated her benefits. Chereza filed a request for an administrative hearing, and, after the hearing, the ALJ found that Chereza was no longer disabled. Chereza filed an appeal with the Appeals Council, which denied review. Chereza then sought review of the ALJ's decision in the district court, which upheld the

Commissioner's decision to deny benefits.

At the administrative hearing, Chereza testified that she regularly went to her neighbor's house, played with her neighbor's dogs, and tried to pay her bills during the day. She prepared her own meals and sometimes drove herself to doctor appointments. Chereza listed her impairments as: fibromyalgia, depression, anxiety, hypoglycemia, compulsive disorder, attention deficit disorder, and bipolar disorder.

The medical evidence showed the following. In February 1994, Chereza had tubes inserted into her ears after complaining of hearing loss. The tubes improved Chereza's hearing significantly.

In April 1997, Chereza met with Ajay Krishnan, a physical therapist, to address pain in her neck and back. Krishnan noted that Chereza could not tolerate any range of motion in her cervical spine. Radiology reports from March and September 1997 showed that Chereza's cervical spine appeared normal. In May 2002, and January 2003, Chereza was diagnosed with cervical sprains, which limited her range of motion such that she needed assistance to sit, get out of bed, and dress herself. From July 2002, through November 2002, Dr. Gilberto Acosta treated Chereza for neck and back pain. Dr. Acosta prescribed a muscle relaxant on Chereza's initial visit and subsequently prescribed water therapy, noting that

3

Chereza's best treatment options were "extremely conservative." Dr. Acosta also prescribed Botox injections and a Lidoderm patch to reduce muscle pain. Chereza reported significant improvements in her pain and, by November 2002, Dr. Acosta instructed Chereza to return on an as-needed basis. Chereza received additional Botox injections on May 14, 2003, October 30, 2003, and April 27, 2004, to treat muscle spasms. Dr. Stanley Rabinowitz examined Chereza in July 2004, and determined that her range of motion in her cervical spine was normal.

Pre-October 1998, medical records showed that, in 1996 and 1997, Chereza was diagnosed with depression, anxiety, and agoraphobia[1], which Dr. Rudolfo Vocal described as "difficult to control." Chereza reported having panic attacks and Dr. Vocal prescribed medication to control Chereza's obsessive thoughts. In February 1998, Chereza was hospitalized for depression and suicidal ideation. She reported "hearing voices" and was prescribed medication for symptoms of auditory hallucinations. In April 1998, Chereza's therapist determined that Chereza was "in crisis" and needed more intensive services. Chereza subsequently moved into a group home.

Medical evidence from October 1998 through August 1, 2003, showed that

---

[1]Agoraphobia is the abnormal fear of being helpless in a situation from which escape may be difficult or embarrassing. The condition is characterized initially often by panic or anticipatory anxiety and later by avoidance of open or public spaces. See www.merriam-webster.com/medlineplus/agoraphobia.

Chereza received inpatient treatment for depression and an overeating disorder at The Willough at Naples ("The Willough") from May 15 through June 12, 2002, and from January 21 through February 5, 2003.

Post-August 1, 2003, medical records showed that Dr. Paul Betancourt prescribed additional medication after Chereza complained of mood swings and pressured speech. Dr. Irene Warburton examined Chereza in November 2003, and found her speech and motor behavior to be normal. In December 2003, Dr. Norma Henriquez noted that medication controlled Chereza's mood, depression, and anxiety. In February 2004, Chereza reported that her mood was under control. Margaret Black, a licensed social worker, wrote in a May 2004 letter that Chereza had difficulty concentrating and was easily distracted. She stated that Chereza responded to psychotherapy, had few stressors in her life, and had improved her coping skills, although she still had difficulty understanding verbal commands or written directions. In July 2004, Dr. Rabinowitz found that Chereza's memory was intact, her behavior was appropriate, and she appeared capable of handling her own funds. Chereza reported, in May 2004, that she prepared her own meals, did all of her own shopping and got along well with others. She noted memory and concentration difficulties. A May 11, 2004, "Psychiatric Review Technique," completed by Dr. Martha Putney indicated that Chereza's activities of daily living,

5

ability to maintain social functioning, and ability to maintain concentration, persistence, and pace were mildly limited. A July 28, 2004, Functional Residual Capacity Assessment determined that Chereza had no postural, manipulative, visual, communicative, or environmental limitations.

The ALJ found that, as of August 1, 2003, Chereza's mental impairments were no longer severe, because her depression and anxiety were satisfactorily controlled with medication, and she was not experiencing hallucinations, had not been psychiatrically hospitalized, and had not required intensive psychiatric care. The ALJ found, based on opinions of state agency psychological consultants and the record as a whole, that Chereza had only mild restrictions in activities of daily living. Accordingly, the ALJ determined that Chereza's disability ended as of August 1, 2003.

Chereza appealed the ALJ's decision to the Appeals Council and submitted additional medical evidence. The Appeals Council denied review.

Chereza then filed a complaint in the district court, arguing that (1) the ALJ failed to properly consider the medical evidence and applied the wrong legal standard in reaching his decision, and (2) the ALJ's decision was unreasonable and not supported by substantial evidence.

The district court found that the ALJ properly compared the prior medical

6

evidence to the current medical evidence. It determined that substantial evidence supported the ALJ's finding that Chereza's mental impairments had improved and were no longer severe. Finally, the court found that the medical record did not support Chereza's contention that her cervical spine or hearing impairments were severe. Accordingly, the district court affirmed the ALJ's decision to deny benefits as of August 1, 2003.

## II.

### A. *Whether Chereza's Mental Health Impairments Had Medically Improved*

We review a Social Security decision "to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The burden rests with the claimant to prove that she is disabled and entitled to Social Security benefits. *See* 20 C.F.R. § 404.1512(a).

An ALJ may terminate a claimant's benefits upon finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). To determine whether disability should be terminated, the ALJ must conduct a multi-step evaluation

7

process and determine:

    (1)    Whether the claimant is engaging in substantial gainful activity;

    (2)    If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

    (3)    If impairments do not meet a listing, whether there has been medical improvement;

    (4)    If there has been improvement, whether the improvement is related to the claimant's ability to do work;

    (5)    If there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

    (6)    If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

    (7)    If the claimant has a severe impairment, whether the claimant can perform past relevant work;

    (8)    If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*See* 20 C.F.R. § 404.1594(f). To determine if there has been medical improvement, the ALJ must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985); *see* 20

8

C.F.R. § 404.1594(c)(1).

Although evidence presented to the Appeals Council, but not to the ALJ, is part of the record on appeal, when the Appeals Council has denied review of the ALJ's decision, we look only to evidence actually presented to the ALJ to determine whether the ALJ's decision is supported by substantial evidence. *Falge v. Apfel*, 150 F.3d 1320, 1322-23 (11th Cir. 1998) (noting that we will consider evidence submitted only to the Appeals Council if the plaintiff requests a remand for consideration of newly discovered evidence).

Here, the ALJ properly compared the medical evidence underlying the October 1998, disability determination to new evidence Chereza had presented. He accurately summarized the medical evidence available in 1998, as well as Chereza's recent medical evidence, and pointed out specific areas of improvement. Although Chereza argues that the ALJ erred in considering her history of auditory hallucinations, the medical records, available in 1998, indicated that Chereza suffered from auditory hallucinations, and the ALJ stated, in his 1998 opinion, that he had considered the "entire record" in determining that Chereza was disabled. Accordingly, because evidence of Chereza's auditory hallucinations was considered by the ALJ in making the original disability determination, the ALJ did not err in considering evidence of these hallucinations in determining whether

9

Chereza's condition had improved. *See McAulay*, 749 F.2d at 1500.

Chereza also argues that the ALJ erroneously stated that she had not been psychiatrically hospitalized, because she was hospitalized at The Willough for an eating disorder and depression. However, Chereza's hospitalizations at The Willough occurred in 2002 and early 2003. Because the ALJ found that Chereza's impairments did not improve until August 1, 2003, the hospitalizations occurred at a time when Chereza was disabled and entitled to disability benefits. Thus, the ALJ did not err in determining that, since the date of medical improvement, Chereza had not been psychiatrically hospitalized.

In determining whether the ALJ's finding of medical improvement is supported by substantial evidence, we consider only the evidence actually presented to the ALJ, because the Appeals Council denied review of the ALJ's determination. *See Falge*, 150 F.3d at 1322-23. The medical evidence available to the ALJ in 1998 showed that Chereza suffered from a panic disorder, agoraphobia that was difficult to control, and obsessive thoughts. These impairments were so severe that Chereza was admitted into a hospital for depression and suicidal ideations, was subsequently determined to be "in crisis," and was eventually placed into a group home. The medical evidence also indicated that Chereza was taking medication for auditory hallucinations.

The medical evidence after August 1, 2003, showed marked improvements in these mental impairments, as Chereza and Dr. Henriquez both reported that Chereza's depression and anxiety – two impairments upon which the initial disability determination was based – were generally controlled by medication. Chereza also reported no auditory hallucinations after August 1, 2003. In November 2003, Dr. Warburton noted that Chereza's speech and motor behavior were normal and, in May 2004, Chereza herself reported that she was able to prepare meals, shop, and get along well with others. Although Chereza and Black indicated that Chereza had memory and concentration difficulties, Dr. Rabinowitz determined that Chereza's memory was intact and a May 2004, Psychiatric Review Technique determined that Chereza's ability to maintain social functioning, concentration, persistence, and pace were only mildly limited. Furthermore, Black noted that Chereza had few stressors in her life, responded to psychotherapy, and had improved coping skills. Thus, a comparison of the post-August 1, 2003, medical evidence with the pre-October 1998, evidence shows that (1) Chereza's mental impairments no longer required hospitalization or intensive inpatient treatment, (2) medication controlled the majority of Chereza's symptoms, and (3) Chereza's ability to carry on daily activities were only mildly limited. The ALJ correctly determined that this was a significant improvement from Chereza's

11

October 1998, mental condition.

Chereza argues that the district court erred in placing too much weight on the opinions of non-examining physicians. While it is true that reports of non-examining physicians do not constitute substantial evidence on which to base the denial of benefits, *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988), the ALJ stated that it considered the opinions of non-examining physicians in conjunction with Chereza's symptoms, objective medical evidence, and other medical opinions. Furthermore, the opinions of Dr. Rabinowitz and other non-examining physicians do not conflict with the post-August 1, 2003, opinions of Chereza's examining physicians, who noted that Chereza's speech and motor behavior were normal and that her depression and anxiety were controlled. *See* 20 C.F.R. § 416.927(f)(2)(i) (providing that an ALJ may consider reports and assessments of state agency physicians as expert opinions); *Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991) (providing that an ALJ may rely on a non-examining physician's report in denying disability insurance benefits if the non-examining physician's report did not contradict information in examining physicians' reports).

Finally, Chereza argues that the ALJ erred in rejecting Black's medical opinions. Chereza specifically cites a letter from Black, dated August 26, 2006, in which Black opined that Chereza could not deal with work stresses or complete a

12

normal work day without interruptions from psychologically based symptoms. However, this letter was submitted only to the Appeals Council, not the ALJ, and, therefore, the ALJ could not have considered it. Furthermore, we do not consider this evidence in determining whether the ALJ's decision was supported by substantial evidence. *See Falge*, 150 F.3d at 1322-23. The record examined by the ALJ did contain a May 7, 2004, letter from Black, in which Black noted that Chereza was easily distractable and had difficulty understanding written or verbal directions. However, as noted above, even in light of this letter, the ALJ's decision was supported by substantial evidence. Accordingly, the district court did not err in finding that the ALJ's determination, that Chereza's medical improvements had improved as of August 1, 2003, was supported by substantial evidence.

> ### B. *Whether The ALJ Erred in Determining That Chereza's Mental Health, Cervical Spine, and Hearing Impairments Were Not "Severe"*

The claimant bears the burden of proving that she has a severe impairment or combination of impairments. *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "Basic work activities" include: physical functions such as walking, standing, sitting, lifting, pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

13

understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is a threshold inquiry where only the most trivial impairments are rejected. *Id.*

### i.    *Mental Health Impairments*

The ALJ determined that Chereza's mental health impairments were "severe" until August 1, 2003. The medical evidence after August 1, 2003, showed that Chereza complained of mood swings and pressured speech, but reported that her depression and anxiety were controlled by medications. Dr. Warburton, a treating physician, described Chereza's speech and motor behavior as normal, and Dr. Rabinowitz, an examining physician, stated that Chereza's memory was intact, her behavior was appropriate, and she appeared able to handle funds. Chereza reported that she did all of her shopping, prepared her meals, and got along well with others. Black reported that Chereza had difficulty understanding verbal or written directions, but did not indicate how severe this

14

problem was, and Dr. Putney determined that Chereza's daily activities, concentration, persistence, and pace were only mildly limited. *See Edwards*, 937 F.2d at 585 (providing that an ALJ may rely on a non-examining physician's report in denying disability insurance benefits if the non-examining physician's report did not contradict information in examining physicians' reports). Based on this medical evidence, substantial evidence supports the ALJ's conclusion that, as of August 1, 2003, Chereza was no longer suffering from a severe mental impairment.

### ii.    *Cervical Spine Impairment*

Substantial evidence supports the ALJ's finding that Chereza's cervical spine impairment was not severe. Radiology reports from March and September 1997, showed that Chereza's cervical spine appeared normal. Although Chereza complained of stiffness and pain in her cervical spine from May through December 2002, Dr. Acosta noted that injections, water therapy, and a Lidoderm patch provided pain relief. In fact, by December 2002, Chereza reported "very significant relief" in pain and stiffness, and Dr. Acosta determined that there was no need for repeat injections. Although Chereza was diagnosed with a cervical sprain in January 2003, and received another Botox injection in May 2003, after August 1, 2003, Chereza received only two Botox injections to treat "muscle spasms." Furthermore, any pain or stiffness in Chereza's cervical spine did not

appear to limit her ability to perform work activities. An August 2003 Physical Residual Functional Capacity Assessment showed that Chereza could frequently carry 10 pounds, stand or walk for 6 hours in an 8-hour workday, climb stairs, and balance, stoop, kneel, crouch, and crawl. Moreover, Chereza indicated in May 2004 that she was able to prepare her own meals and do all of her shopping. Finally, Dr. Rabinowitz determined, in July 2004, that Chereza's range of motion in her cervical spine was normal, and a July 2004, Residual Capacity Assessment indicated that Chereza could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. Accordingly, because Chereza's problems with her cervical spine did not have more than a minimal effect on her daily activities, the district court did not err in determining that Chereza's cervical spine impairment was not severe. *See* 20 C.F.R. § 404.1521(a), (b); *McDaniel*, 800 F.2d at 1031.

### iii. *Hearing Impairment*

In an October 30, 2003, "Reconsideration Report for Disability Cessation" and at the hearing before the ALJ, Chereza did not mention her hearing impairment as an impairment that impacted her daily activities. Although Chereza mentioned that she was having trouble hearing the ALJ at a prior hearing, another individual indicated that the problem was with the sound system, not Chereza's hearing, and

Chereza continued to answer the ALJ's questions. Furthermore, recent evidence regarding Chereza's hearing impairment was presented only to the Appeals Council, so that the ALJ did not have an opportunity to consider it. Because the claimant bears the burden of producing evidence of her disability, the district court did not err in failing to consider Chereza's hearing impairment as a severe impairment. *See Chester*, 792 F.2d at 131. Accordingly, we affirm the district court's decision upholding the denial of social security benefits as of August 1, 2003.

**AFFIRMED.**