[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10082
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-00136-MP-GRJ

SHARON R JARRELL,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 8, 2011)

Before BARKETT, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Sharon Jarrell, through counsel, appeals the district court's order affirming the

Commissioner's denial of disability insurance benefits, pursuant to 42 U.S.C. §

405(g). On appeal, she argues that: (1) the administrative law judge ("ALJ") had no evidentiary basis and failed to give adequate reasons for discrediting her pain testimony; and (2) the ALJ failed to include all of her mental and physical limitations in his hypothetical questions to the vocational expert ("VE"). After careful review, we affirm.

Our standard of review of a Social Security case is "demarcated by a deferential reconsideration of the findings of fact and exacting examination of the conclusions of law." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The Commissioner's factual findings are conclusive if "supported by substantial evidence," but the "[Commissioner's] conclusions of law, including applicable review standards, are not presumed valid." Id. (quotation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance," in that "it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (alteration and quotation omitted).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At the first step, the claimant must prove that she has not engaged in substantial gainful activity. At the second step, she must prove that she has an impairment or combination of impairments that is severe. If, at the third step,

2

she proves that her impairment or combination of impairments meets or equals a listed impairment, she is automatically found disabled regardless of age, education, or work experience. If she cannot prevail at the third step, she must proceed to the fourth step, where she must prove that she is unable to perform her past relevant work. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of residual functional capacity, age, education, and work experience, the claimant can perform other work. Id.; Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The ALJ must evaluate a claimant's subjective complaints of pain or other subjective symptoms using a three-part standard. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). This "pain standard" requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. If the ALJ fails to articulate reasons for discrediting subjective pain testimony, that testimony must be accepted as true. Foote v. Charter, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Id.

3

The regulations require that all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain, must be considered in addition to the objective medical evidence, laboratory findings, and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability. 20 C.F.R. § 404.1529(c)(4). The ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, and effectiveness of any medications taken to alleviate pain; (5) treatment or measures taken by the claimant for relief of symptoms; and (6) other factors concerning functional limitations. See 20 C.F.R. § 404.1529(c)(3). Additionally, the ALJ may consider the claimant's "appearance and demeanor during the hearing" as a basis of credibility, although he cannot impose his observations in lieu of a consideration of the objective medical evidence. Norris v. Heckler, 760 F.2d 1154, 1157-58 (11th Cir. 1985).

"The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony" when the medical evidence is inconclusive. Chester v. Brown, 792 F.2d 129, 132 (11th Cir. 1985) (quotation omitted). For a VE's answer to a hypothetical question to constitute

substantial evidence, the question must comprise all of the claimant's mental and physical limitations. Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985).

Here, there was substantial evidence to support the ALJ's decision to discredit Jarrell's pain testimony. The ALJ explicitly found that Jarrell's "medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that [her] statements concerning the intensity, duration and limiting effects of these symptoms [were] not entirely credible." He properly applied the three-part pain test by finding that there was evidence of an underlying medical condition, but that the objective medical evidence did not confirm the severity of the alleged pain arising from that condition. See Holt, 921 F.2d at 1223. Indeed, as the record shows, there was ample medical evidence in support of the ALJ's conclusions, including Jarrell's conservative pain treatment in 1998, her lack of any medical treatment for her pain between February and June 1999, and her lack of prescription pain medication in the pertinent time frame, which weighs against her credibility that her pain was debilitating. See 20 C.F.R. § 404.1529(c)(3). In addition, in making his credibility finding, the ALJ also relied upon his observation of Jarrell's demeanor at the hearing, which is proper under our case law. See Norris, 760 F.2d at 1157-58. Thus, we affirm the ALJ's evaluation of Jarrell's pain and his determination that she

did not have a severe medically determinable impairment or combination of impairment. See Foote, 67 F.3d at 1562.

Furthermore, contrary to Jarrell's contention, the ALJ did assess her mental health impairments. The ALJ indicated that he had "thoroughly considered the extent of [Jarrell's] mental problems," and found that her activities of daily living were not limited; her social functioning was mildly limited; and her ability to adequately maintain her concentration, attention, and pace were mildly limited; and she had no episodes of decompensation throughout the relative time period. He also determined that Jarrell "could perform simple, routine repetitive tasks," which is consistent with her mental residual functional capacity ("RFC") evaluation which indicated that she had no difficulties with understanding, remembering, and carrying out short simple instructions, slight limitations in responding to changes in a routine work setting, and moderate limitations in responding to work pressure.[1]

---

[1] While the ALJ did not include Jarrell's subjective pain complaints and her assertion that she was not able to sit or stand for more than 15 minutes at a time, that was because, as we discussed earlier, he properly discredited her testimony. In fact, her physical RFC indicated that she had no limitations sitting, standing, or walking, and the only medical record that Jarrell relies upon to support her assertion that she had a severe mental condition was made many months beyond her last insured date of June 30, 1999. And in any event, her diagnosis of an anxiety disorder in November 1999 does not necessarily compel the conclusion that the condition was disabling. See 20 C.F.R. § 416.920(c) (stating that the claimant must show that her impairment or combination of impairments significantly limited her physical or mental ability to do basic work activities in order to be determined disabled).

Moreover, as the record shows, the ALJ accounted for all of Jarrell's credible mental and physical limitations in the hypothetical questions to the VE. The ALJ's questions assumed that Jarrell was limited to work involving only simple, routine, repetitive tasks, and thus, adequately accounted for her mild mental limitations. What's more, the medical records support the ALJ's findings that Jarrell's depression and anxiety only caused mild limitations, as Jarrell testified that she had never been hospitalized for mental health reasons, had no history of psychiatric problems, and believed the origin of her depression was her then-current family situation. The VE noted that, although Jarrell's past relevant work as a manicurist and security guard were defined as "semi-skilled jobs," they were lower-level semi-skilled jobs that did not require complex or varied tasks. And in response to the ALJ's hypothetical questions limiting Jarrell's exertional level to "light," the VE stated that she retained the ability to work as a manicurist or security guard, characterizing those jobs as light to sedentary. In addition, based on the evidence discussed earlier, the medical records support the ALJ's determination that Jarrell retained the RFC to perform at the light exertional level from February through June 1999.

Therefore, substantial evidence supports the ALJ's findings that Jarrell's mental limitations did not preclude simple, routine, repetitive tasks and that her physical exertional level was "light." The ALJ included these mental and physical

7

RFC limitations in his hypothetical questions to the VE, and thus, his questions to the VE  comprised all of her mental and physical limitations.  See Pendley, 767 F.2d at 1562.

**AFFIRMED.**