[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11954
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00040-CDL-MSH


PATRICIA C. COLEY,

                                                            Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                            Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 3, 2019)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Patricia Coley appeals the district court's order affirming the administrative law judge's ("ALJ") denial of disability insurance benefits, pursuant to 42 U.S.C. § 405(g).  On appeal, Coley first argues that the ALJ's conclusion that her impairments did not meet or medically equal a listed impairment was not supported by substantial evidence because the ALJ ignored that she required oxygen on a constant basis and that her sleep apnea led to extreme drowsiness and narcolepsy.  Second, Coley argues that substantial evidence did not support the ALJ's conclusion that she had the residual functional capacity ("RFC") for sedentary work because the ALJ improperly: (1) determined that her testimony was not credible; (2) failed to consider all of her medical conditions; (3) considered her conservative treatment; and (4) gave only limited weight to the opinions of Dr. Alphonza Vester and Dr. Curtis Clark.  Finally, Coley argues that the ALJ was biased against her based on a disagreement with counsel about the untimely filing of evidence on the morning of the hearing.

## I.

In social security appeals, we review the decision of an ALJ as the Commissioner of Social Security's ("the Commissioner") final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review *de novo* the legal principles upon which the ALJ's decision is based, but the ALJ's factual

2

findings are conclusive if supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted). Even if the evidence preponderates against the factual findings made by the Commissioner, we must affirm if the decision reached is supported by substantial evidence. *Ingram*, 496 F.3d at 1260. We will not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

There is a five-step process for determining whether a claimant has met the burden of proving her disability. *Doughty*, 245 F.3d at 1278. To receive disability benefits, the claimant must establish at the first step that she is not undertaking substantial gainful activity. *Id.* At step two, the claimant must establish that she has a severe impairment or combination of impairments. *Id.* At step three, a claimant will be considered disabled without consideration of age, education, and work experience if she establishes that her impairment meets one of the listed impairments found in the regulations. *Id.* At step four, if the claimant could not establish the existence of a listed impairment, she must establish that her impairment prevents her from performing her past relevant work. *Id.* Finally, at

3

step five, the ALJ assesses the claimant's residual functional capacity ("RFC"), age, education, and past work experience to determine whether she can perform work other than her past relevant work. *Id.*

The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). To "meet" a listing, a claimant must have a diagnosis included in the listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement. *Id.* § 404.1525(a)-(d). To "equal" a listing, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, then the Commissioner reviews the impairment's symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *Id.* §§ 404.1526(b)(3), 404.1529(d)(3). The claimant has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

"A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012).

4

Here, Coley has waived her argument that her sleep apnea and use of oxygen met or medically equaled a listed impairment because she has not cited any authority or evidence to support such a conclusion. *See Hamilton*, 680 F.3d at 1319. In any event, the ALJ did consider both her breathing problems and her sleep apnea in determining that her impairments did not meet a listed impairment. First, although the ALJ did not discuss Coley' s use of oxygen directly, he did address her respiratory problems and concluded she had not met the listings for either asthma or COPD. Second, the ALJ explicitly addressed Coley's sleep apnea and concluded that it did not meet the listing for sleep apnea. Thus, Coley's claim that the ALJ did not consider these impairments is belied by the record. Further, although the ALJ did not explicitly state or explain why Coley also failed to show that her medical impairments did not medically equal a listed impairment, Coley has made no argument about this issue on appeal or indicated how her medical impairments medically equal a listed impairment.

## II.

If the claimant has a severe impairment that does not meet or equal the severity of a listed impairment, the ALJ proceeds to the fourth step and assesses the claimant's RFC, which measures whether a claimant can perform past relevant

5

work, despite her impairments. *See* 20 C.F.R. § 404.1520(e)-(f). Jobs are classified as sedentary, light, medium, heavy, and very heavy, depending on the physical exertion requirements of the work. *Id.* § 404.1567. Sedentary work can require lifting up to ten pounds at a time and occasionally lifting or carrying light items, such as small tools. *Id.* § 404.1567(a). A certain amount of walking and standing may also be necessary, even though sedentary jobs are defined as jobs involving sitting. *Id.*

"To support a conclusion that [the claimant] is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). Generally, vocational expert testimony is not necessary to determine whether a claimant can perform her past relevant work. *Id.* at 1573 n.2. The claimant bears the burden of demonstrating that she cannot return to her past relevant work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). However, the ALJ is not required to specifically address every aspect of an opinion or every piece of evidence in the record. *See Dyer*, 395 F.3d at 1211. The ALJ is not required to use particular phrases or formulations, or cite to particular regulations or cases, as long as the court can

6

determine what statutory and regulatory requirements he applied. *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987).

The opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179. Good cause exists where the treating physician's opinion was not supported by the evidence, was conclusory, was inconsistent with the physician's own medical records, or where the evidence supported a contrary finding. *Id.* The ALJ may discount a medical opinion that appears to be based primarily on the claimant's subjective complaints. *See Crawford*, 363 F.3d at 1159. The ALJ may consider personal observations of a claimant's appearance and demeanor when evaluating symptoms. *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985). When the ALJ states specific reasons for declining to give the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore*, 405 F.3d at 1212.

The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). The opinion of a non-examining physician does not constitute the good cause needed to reject a treating physician's opinion. *Id.* Opinions on issues such as whether the claimant is disabled and the claimant's RFC are not medical opinions and are reserved to the Commissioner. 20 C.F.R.

§ 416.927(d).  Opinions on issues reserved to the Commissioner, even when offered by a treating source, are not entitled to any special significance.  *Id.* § 416.927(d)(3).

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The pain standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Id.*  If the medically determinable impairments reasonably could be expected to cause the alleged symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine whether the subjective complaints are credible.  20 C.F.R. § 416.929(c)(1).  A claimant's daily activities may be considered in evaluating and discrediting complaints of disabling pain.  *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

If the ALJ decides not to credit the disability claimant's testimony as to her pain, the ALJ must articulate explicit and adequate reasons for that decision.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  An ALJ's clearly articulated

credibility finding supported by substantial evidence in the record will not be disturbed by a reviewing court. *Id.* at 1562.

Although credibility determinations are reserved to the ALJ, we have rejected the use of "sit and squirm" jurisprudence, where the ALJ creates his own criteria for measuring pain and considers only objective medical evidence to evaluate a claimant's testimony about pain. *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987). Moreover, the ALJ cannot substitute his opinion for that of a physician or vocational expert. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). "[A] claimant's failure to adhere to prescribed treatment cannot be grounds for denial of [social security] benefits when the reason for such failure is beyond the claimant's control." *Lucas*, 918 F.2d at 1574.

If the claimant cannot do her past relevant work, the ALJ proceeds to the fifth step of the evaluation to determine whether, given her RFC, age, education, and work experience, she can complete other work. *Wilson*, 284 F.3d at 1227. The testimony of a vocational expert is only required to determine whether the claimant's RFC permits her to do other work after she has met her initial burden of showing that she cannot do past work. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quotation marks omitted).

9

Here, substantial evidence supports the ALJ's conclusion that Coley retained the RFC to do sedentary work because the ALJ articulated specific and adequate reasons for his credibility determination, considered all of her medical impairments, did not misuse the vocational expert's testimony, and properly reduced the weight given to the opinions of Dr. Clark and Dr. Vester.

As to her argument that the AU failed to apply the proper pain standard after concluding that her testimony was not entirely credible, the ALJ articulated specific and adequate reasons for his credibility determination. *See Foote*, 67 F.3d at 156 1-62. First, the ALJ correctly noted that the record contained no medically significant events that corresponded with Coley's alleged onset date of December 2011. The only medical evidence that Coley submitted from December 2011 was a follow-up appointment with Dr. DeClue, where no complaint was recorded, her vitals were not taken, and the notes indicated only that the appointment was for "unspecified procedures and aftercare." Second, substantial evidence supported the ALJ's conclusion that Coley's claim that she needed a cane was unpersuasive because her medical records did not mention the need for a cane. Prior to Dr. Vester's examination in October 2015, the only mention of a cane in the record was by Dr. DeClue in October 2010. Coley's other records consistently indicated that she had a normal gait and never mentioned a cane. Although Coley told Dr. Vester that she had used a cane since 2006 and that it was prescribed by a doctor,

10

there is no evidence in the record supporting that statement. *Crawford*, 363 F.3d at 1159 (stating that the ALJ may discount a medical opinion that appears to be based primarily on the claimant's subjective complaints).

Third, substantial evidence supported the ALJ's conclusion that Coley's claim of difficulty sleeping was unpersuasive because the sleep study conducted after Coley began her BiPAP regimen showed acceptable sleep efficiency and Coley reported in April 2015 that she slept all night without difficulty and was rested and well-refreshed.  Fourth, substantial evidence supported the ALJ's conclusion that Coley's claim that she needed 24-hour care from her husband was unpersuasive because Coley also testified that her husband worked 16 hours a week and was not with her every day.  Fifth, substantial evidence supported the ALJ's conclusion that Coley's testimony that she was only comfortable when lying in bed with a heating pad was unpersuasive because Coley also testified that she often went with her husband to work, where she sat in a chair and read magazines, watched TV, or fell asleep.  *Harwell*, 735 F.2d at 1293 (stating that claimant's daily activities may be considered in evaluating and discrediting complaints of disabling pain).  Finally, substantial evidence supported the ALJ's conclusion that Coley's testimony regarding extreme fatigue was unpersuasive because, with a couple of exceptions, Coley consistently denied over-sedation or side effects from her medications in the medical records.  Moreover, the ALJ properly considered

11

that Coley stayed awake at the hearing and had no difficulties answering the questions. *Norris*, 760 F.2d at 1157-58 (stating that the ALJ may consider personal observations of a claimant when evaluating symptoms). Accordingly, the ALJ provided a clearly articulated credibility finding with substantial supporting evidence. *See Foote*, 67 F.3d at 1562.

As to Coley's argument that the ALJ improperly failed to consider her history of pulmonary emboli, edema, hypertension, and deep vein thrombosis in his RFC, the ALJ did explicitly consider some of those medical issues. The ALJ specifically concluded that an RFC for sedentary work accommodated Coley's hypertension and history of pulmonary emboli. Although the ALJ did not specifically mention edema and deep vein thrombosis in his RFC analysis, he included these in the list of Coley's impairments during step two of the sequential evaluation. Substantial evidence supported the ALJ's failure to include these in his RFC analysis because there was no evidence in the record indicating that Coley was limited by either edema in her legs or her history of deep vein thrombosis. Although the medical records routinely indicated that Coley had edema in her lower extremities, they never expanded on any effects the edema had on Coley. Similarly, all medical tests for deep vein thrombosis in the record were negative, leaving only a single 2007 occurrence. As for Coley's argument that the ALJ misused testimony from the vocational expert because his initial hypothetical at the

12

hearing did not include symptoms of drowsiness and extreme fatigue, the testimony of a vocational expert was only required at step five of the sequential evaluation, after she had met her initial burden of showing that she could not do past work at step four.  *Schnorr*, 816 F.2d at 582.  The ALJ concluded that Coley could do past work and never reached step five of the analysis.  Thus, the vocational expert's testimony regarding the ALJ's hypothetical was not relevant to the RFC determination.

Finally, as to Coley's argument that the ALJ improperly reduced the weight given to the opinions of Dr. Clark and Dr. Vester, the ALJs decision to do so was supported by substantial evidence.  First, substantial evidence supported the ALJ's decision to give only some weight to Dr. Clark's opinion that Coley could not work due to shortness of breath, a history of pulmonary emboli, and osteoarthritis because the medical tests in the record relating to those issues were largely unremarkable or denoted as "mild."  *Winschel*, 631 F.3d at 1179 (stating that good cause exists to give less than substantial weight to a treating physician's opinion when it was not supported by the evidence).  Second, substantial evidence supported the ALJ's decision to give little weight to Dr. Vester's opinion regarding Coley's limitations because it was not supported by the evidence, which instead supported a contrary finding. *Winschel*, 631 F.3d at 1179.  Although Dr. Vester applied extensive limitations to Coley, the medical records indicated that she

13

usually had a normal gait, had only minimal back treatment and mild MRJ findings, and had full hand grip strength and upper extremity range of motion. To the extent that Coley argues that the ALJ improperly considered her conservative treatment history because her doctors recommended against more aggressive treatment, given her history of pulmonary emboli, the medical records did not indicate that Coley had such a limitation.  Similarly, to the extent that Coley argues that the ALJ improperly considered her conservative treatment history because she could not afford more aggressive treatment, the medical records did not indicate that more aggressive treatment was necessary. Specifically, once beginning her BiPAP regimen for her sleep apnea, she reported that she slept through the night and was rested and well-refreshed.  After beginning to take pain medication for her back, Coley reported that she was feeling better. Thus, the ALJ did not inappropriately consider Coley's conservative treatment history.

### III.

The Social Security Act requires that a claimant's hearing be both full and fair.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The ALJ plays a crucial role in the disability review process and must both develop a full and fair record and carefully weigh the evidence, giving individualized consideration to each claim.  *Id.* at 1401.  Because the ALJ's decision will typically be the final

14

word, given the standard of review, the ALJ's impartiality is "integral to the integrity of the system." *Id.* Thus, the ALJ must not conduct a hearing if he is prejudiced or partial with respect to any party. *Id.* at 1400 (quoting 20 C.F.R. § 404.940). A presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). The claimant may rebut this presumption by a showing of conflict of interest or some other specific reason for disqualification, but generalized assumptions are insufficient. *Id.* at 195-96. The party asserting a disqualifying interest bears the ultimate burden of establishing that interest. *Id.* at 196.

Here, Coley has failed to demonstrate that the ALJ was biased in handling her case. Coley has not demonstrated that the ALJ failed to develop a full and fair record or carefully weigh the evidence. *Miles*, 84 F.3d at 1401. Coley argues that the ALJ failed to properly weigh the medical opinions in the record, but, as noted above, the ALJ did not err in the weight assigned to the Dr. Vester's medical opinion. Further, although the ALJ showed some annoyance at counsel's late filing of medical records at the hearing, he assured Coley that he would consider everything that was in the record. Coley points to no other specific instance of bias in her case, and generalized assumptions that the ALJ must have been biased because he found that she was not disabled are not enough to overcome the

15

presumption that the ALJ was unbiased.  *Schweiker*, 456 U.S. at 195-96.

Accordingly, she has not established that the ALJ was biased against her.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**